# UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

PEGGIE HARRINGTON,

     **Plaintiff,**

                        **Case No. 2:18-cv-9641**

   v.                     **Magistrate Judge Norah McCann King**

ANDREW SAUL,
Commissioner of Social Security,

     **Defendant.**

## OPINION AND ORDER

This matter comes before the Court pursuant to Section 205(g) of the Social Security Act, as amended, 42 U.S.C. § 405(g), regarding the applications of Plaintiff Peggie Harrington for Disability Insurance Benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401 *et seq.* and Widow's Insurance Benefits, 42 U.S.C. §§ 402 *et seq.* Plaintiff appeals from the final decision of the Commissioner of Social Security denying Plaintiff's applications. After careful consideration of the entire record, including the entire administrative record, the Court decides this matter pursuant to Rule 78(b) of the Federal Rules of Civil Procedure and Local Civil Rule 9.1(f). For the reasons that follow, the Court affirms the Commissioner's decision.

## I.    PROCEDURAL HISTORY

On January 27, 2014, Plaintiff filed applications for Disability Insurance Benefits and Widow's Insurance Benefits, alleging disability since November 1, 2008. R. 170−85. Plaintiff's applications were denied initially and upon reconsideration. R. 102−11, 114−19. Plaintiff sought a *de novo* hearing before an administrative law judge. R. 120−21. Administrative Law Judge Douglass Alvarado ("ALJ") held a hearing on December 13, 2016, at which Plaintiff, who was

1

represented by counsel, appeared and testified, as did a vocational expert. R. 28–63. In a

decision dated February 24, 2017, the ALJ concluded that Plaintiff was not disabled within the

meaning of the Social Security Act from November 1, 2008, the alleged onset date, through the

date of that decision. R. 15–23. That decision became the final decision of the Commissioner of

Social Security when the Appeals Council declined review on March 26, 2018. R. 1–6. Plaintiff

timely filed this appeal pursuant to 42 U.S.C. § 405(g). ECF No. 1. On August 28, 2018, Plaintiff

consented to disposition of the matter by a United States Magistrate Judge pursuant to 28 U.S.C.

§ 636(c) and Rule 73 of the Federal Rules of Civil Procedure. ECF No. 8.[1] On March 12, 2020,

the case was reassigned to the undersigned. ECF No. 28. The matter is now ripe for disposition.

## II.     LEGAL STANDARD

### A.     Standard of Review

In reviewing applications for Social Security disability benefits, this Court has the

authority to conduct a plenary review of legal issues decided by the ALJ. *Knepp v. Apfel*, 204

F.3d 78, 83 (3d Cir. 2000).  In contrast, the Court reviews the ALJ's factual findings to

determine if they are supported by substantial evidence. *Sykes v. Apfel*, 228 F.3d 259, 262 (3d

Cir. 2000); *see also* 42 U.S.C. §§ 405(g), 1383(c)(3). Substantial evidence "does not mean a

large or considerable amount of evidence, but rather such relevant evidence as a reasonable mind

might accept as adequate to support a conclusion." *Pierce v. Underwood*, 487 U.S. 552, 565

(1988) (citation and internal quotations omitted); *see K.K. ex rel. K.S. v. Comm'r of Soc. Sec.*,

No. 17-2309 , 2018 WL 1509091, at *4 (D.N.J. Mar. 27, 2018).  Substantial evidence is "less

than a preponderance of the evidence, but 'more than a mere scintilla.'" *Bailey v. Comm'r of Soc.*

---

[1]The Commissioner has provided general consent to Magistrate Judge jurisdiction in cases seeking review of the Commissioner's decision. *See* Standing Order In re: Social Security Pilot Project (D.N.J. Apr. 2, 2018).

*Sec.*, 354 F. App'x 613, 616 (3d Cir. 2009) (citations and quotations omitted); *see K.K.*, 2018 WL 1509091, at *4.

The substantial evidence standard is a deferential standard, and the ALJ's decision cannot be set aside merely because the Court "acting de novo might have reached a different conclusion." *Hunter Douglas, Inc. v. NLRB*, 804 F.2d 808, 812 (3d Cir. 1986); *see, e.g., Fargnoli v. Massanari*, 247 F.3d 34, 38 (3d Cir. 2001) ("Where the ALJ's findings of fact are supported by substantial evidence, we are bound by those findings, even if we would have decided the factual inquiry differently.") (citing *Hartranft v. Apfel*, 181 F.3d 358, 360 (3d Cir. 1999)); *K.K.*, 2018 WL 1509091, at *4 ("'[T]he district court ... is [not] empowered to weigh the evidence or substitute its conclusions for those of the fact-finder.'") (quoting *Williams v. Sullivan*, 970 F.2d 1178, 1182 (3d Cir. 1992)).

Nevertheless, the Third Circuit cautions that this standard of review is not "a talismanic or self-executing formula for adjudication." *Kent v. Schweiker*, 710 F.2d 110, 114 (3d Cir. 1983) ("The search for substantial evidence is thus a qualitative exercise without which our review of social security disability cases ceases to be merely deferential and becomes instead a sham."); *see Coleman v. Comm'r of Soc. Sec.*, No. 15-6484, 2016 WL 4212102, at *3 (D.N.J. Aug. 9, 2016). The Court has a duty to "review the evidence in its totality" and "take into account whatever in the record fairly detracts from its weight." *K.K.*, 2018 WL 1509091, at *4 (quoting *Schonewolf v. Callahan*, 972 F. Supp. 277, 284 (D.N.J. 1997) (citations and quotations omitted)); *see Cotter v. Harris*, 642 F.2d 700, 706 (3d Cir. 1981) (stating that substantial evidence exists only "in relationship to all the other evidence in the record"). Evidence is not substantial if "it is overwhelmed by other evidence," "really constitutes not evidence but mere conclusion," or "ignores, or fails to resolve, a conflict created by countervailing evidence." *Wallace v. Sec'y of*

*Health & Human Servs.*, 722 F.2d 1150, 1153 (3d Cir. 1983) (citing *Kent*, 710 F.2d at 114); *see K.K.*, 2018 WL 1509091, at *4. The ALJ decision thus must be set aside if it "did not take into account the entire record or failed to resolve an evidentiary conflict." *Schonewolf*, 972 F. Supp. at 284-85 (citing *Gober v. Matthews*, 574 F.2d 772, 776 (3d Cir. 1978)).

Although an ALJ is not required "to use particular language or adhere to a particular format in conducting [the] analysis," the decision must contain "sufficient development of the record and explanation of findings to permit meaningful review." *Jones v. Barnhart*, 364 F.3d 501, 505 (3d Cir. 2004) (citing *Burnett v. Comm'r of Soc. Sec.*, 220 F.3d 112, 119 (3d Cir. 2000)); *see K.K.*, 2018 WL 1509091, at *4. The Court "need[s] from the ALJ not only an expression of the evidence s/he considered which supports the result, but also some indication of the evidence which was rejected." *Cotter*, 642 F.2d at 705-06; *see Burnett*, 220 F.3d at 121 ("Although the ALJ may weigh the credibility of the evidence, [s/]he must give some indication of the evidence which [s/]he rejects and [the] reason(s) for discounting such evidence.") (citing *Plummer v. Apfel*, 186 F.3d 422, 429 (3d. Cir. 1999)). "[T]he ALJ is not required to supply a comprehensive explanation for the rejection of evidence; in most cases, a sentence or short paragraph would probably suffice." *Cotter*, 650 F.2d at 482. Absent such articulation, the Court "cannot tell if significant probative evidence was not credited or simply ignored." *Id.* at 705. As the Third Circuit explains:

> Unless the [ALJ] has analyzed all evidence and has sufficiently explained the weight [s/]he has given to obviously probative exhibits, to say that [the] decision is supported by substantial evidence approaches an abdication of the court's duty to scrutinize the record as a whole to determine whether the conclusions reached are rational.

*Gober*, 574 F.2d at 776; *see Schonewolf*, 972 F. Supp. at 284-85.

Following review of the entire record on appeal from a denial of benefits, the Court can enter "a judgment affirming, modifying, or reversing the decision of the [Commissioner], with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). Remand is appropriate if the record is incomplete or if the ALJ's decision lacks adequate reasoning or contains illogical or contradictory findings. *See Burnett*, 220 F.3d at 119-20; *Podedworny v. Harris*, 745 F.2d 210, 221-22 (3d Cir. 1984). Remand is also appropriate if the ALJ's findings are not the product of a complete review which "explicitly weigh[s] all relevant, probative and available evidence" in the record. *Adorno v. Shalala*, 40 F.3d 43, 48 (3d Cir. 1994) (internal quotation marks omitted); *see A.B. on Behalf of Y.F. v. Colvin*, 166 F. Supp.3d 512, 518 (D.N.J. 2016). A decision to "award benefits should be made only when the administrative record of the case has been fully developed and when substantial evidence on the record as a whole indicates that the claimant is disabled and entitled to benefits." *Podedworny*, 745 F.2d at 221-22 (citation and quotation omitted); *see A.B.*, 166 F. Supp.3d at 518. In assessing whether the record is fully developed to support an award of benefits, courts take a more liberal approach when the claimant has already faced long processing delays. *See, e.g.*, *Morales v. Apfel*, 225 F.3d 310, 320 (3d Cir. 2000). An award is "especially appropriate when "further administrative proceedings would simply prolong [Plaintiff's] waiting and delay his ultimate receipt of benefits." *Podedworny*, 745 F.2d at 223; *see Schonewolf*, 972 F. Supp. at 290.

**B.      Sequential Evaluation Process**

The Social Security Act establishes a five-step sequential evaluation process for determining whether a plaintiff is disabled within the meaning of the statute. 20 C.F.R. § 404.1520(a)(4); *see also id*. at §§ 404.1520(a)(2) ("These rules apply to you if you file an application for a period of disability or disability insurance benefits (or both) . . . . They also

apply if you file an application for widow's or widower's benefits based on disability for months after December 1990."), 404.1505(a) ("We will use this definition of disability if you are applying for a period of disability, or disability insurance benefits as a disabled worker, . . . or, with respect to disability benefits payable for months after December 1990, as a widow, widower, or surviving divorced spouse."); *Andrew V. v. Saul*, No. 2:19-CV-00392, 2020 WL 4572682, at *2 (E.D. Wash. Aug. 7, 2020) ("The definition of disability for disabled widower's benefits is the same as for the standard disability case and the five-step sequential evaluation process is applicable to disabled widower's benefits cases.") (citing 20 C.F.R. §§ 404.1505(a); 404.1520(a)(4)(i)–(v)); *Mace v. Colvin*, No. 3:15CV1229, 2016 WL 6600004, at *1 (M.D. Pa. Nov. 8, 2016) ("The standard for demonstrating disability when seeking widow's benefits is the same as the general disability standard[.]") (citing 20 C.F.R. § 404.335(c)). "The claimant bears the burden of proof at steps one through four, and the Commissioner bears the burden of proof at step five." *Smith v. Comm'r of Soc. Sec.*, 631 F.3d 632, 634 (3d Cir. 2010) (citing *Poulos v. Comm'r of Soc. Sec.*, 474 F.3d 88, 92 (3d Cir. 2007)).

At step one, the ALJ determines whether the plaintiff is currently engaged in substantial gainful activity. 20 C.F.R. § 404.1520(b). If so, then the inquiry ends because the plaintiff is not disabled.

At step two, the ALJ decides whether the plaintiff has a "severe impairment" or combination of impairments that "significantly limits [the plaintiff's] physical or mental ability to do basic work activities[.]" 20 C.F.R. § 404.1520(c). If the plaintiff does not have a severe impairment or combination of impairments, then the inquiry ends because the plaintiff is not disabled. Otherwise, the ALJ proceeds to step three.

At step three, the ALJ decides whether the plaintiff's impairment or combination of impairments "meets" or "medically equals" the severity of an impairment in the Listing of Impairments ("Listing") found at 20 C.F.R. § 404, Subpart P, Appendix 1. 20 C.F.R. § 404.1520(d). If so, then the plaintiff is presumed to be disabled if the impairment or combination of impairments has lasted or is expected to last for a continuous period of at least 12 months. *Id*. at § 404.1509. Otherwise, the ALJ proceeds to step four.

At step four, the ALJ must determine the plaintiff's residual functional capacity ("RFC") and determine whether the plaintiff can perform past relevant work. 20 C.F.R. § 404.1520(e), (f). If the plaintiff can perform past relevant work, then the inquiry ends because the plaintiff is not disabled. Otherwise, the ALJ proceeds to the final step.

At step five, the ALJ must decide whether the plaintiff, considering the plaintiff's RFC, age, education, and work experience, can perform other jobs that exist in significant numbers in the national economy. 20 C.F.R. § 404.1520(g). If the ALJ determines that the plaintiff can do so, then the plaintiff is not disabled. Otherwise, the plaintiff is presumed to be disabled if the impairment or combination of impairments has lasted or is expected to last for a continuous period of at least twelve months.

## III.    ALJ DECISION AND APPELLATE ISSUES

Plaintiff was 52 years old on her alleged disability onset date. R. 22. The ALJ found that Plaintiff is the unmarried widow of a deceased insured worker who attained the age of 50 and that Plaintiff met the non-disability requirements for disabled widow's benefits set forth in section 202(e) of the Social Security Act, 42 U.S.C. § 402(e). R. 18. Plaintiff's date last insured under her own work record for purposes of disability insurance benefits was December

31, 2008. *Id*. For purposes of disabled widow's insurance benefits, the "prescribed period"[2]

ended on December 31, 2010. *Id*.

At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity

since November 1, 2008, her alleged disability onset date. *Id*.

At step two, the ALJ found that Plaintiff suffered from the following severe impairments:

degenerative disc disease of the cervical spine resulting in radiculopathy; and status post-surgical

discectomy and fusion of the cervical spine. *Id*. The ALJ also found that Plaintiff's alleged

impairments of carpal tunnel syndrome, lumbago, positive antinuclear antibodies, arthritis, and

depression were not severe. *Id*.

At step three, the ALJ found that Plaintiff did not suffer an impairment or combination

of impairments that met or medically equaled the severity of any Listing. R. 19.

At step four, the ALJ found that Plaintiff had the RFC to perform sedentary work

subject to various additional limitations. R. 19–22. The ALJ also found that this RFC did not

permit the performance of Plaintiff's past relevant work as a dietary aide and sales floor

member. R. 22.

At step five, the ALJ found that a significant number of jobs–*i.e*., approximately

200,000 jobs as a telephone sales representative–existed in the national economy and could be

performed by an individual with Plaintiff's vocational profile and RFC. R. 22–23. The ALJ

therefore concluded that Plaintiff was not disabled within the meaning of the Social Security

---

[2] "To receive [disabled widow's benefits], Plaintiff must establish that she became disabled prior
to March 31, 2016, the date on which the prescribed period ended." *Randolph v. Comm'r of Soc.
Sec.*, No. CV 2:19-846, 2020 WL 3619682, at *1 n.1 (W.D. Pa. July 1, 2020) (citing 20 C.F.R. §
404.335). "The prescribed period begins on the date of the wage earner's death. The period ends
the earlier of: (1) the calendar month before the month the widow or widower attains age 60; or
(2) the later of seven years after the worker's death, or seven years after the widow or widower
was last entitled to survivor's benefits." *Id*. (citing 20 C.F.R. § 404.335).

Act from November 1, 2008, her alleged disability onset date, through the date of the administrative decision. R. 23.

Plaintiff disagrees with the ALJ's findings at steps four and five and asks that the decision of the Commissioner be reversed and remanded with directions for the granting of benefits or, alternatively, for further proceedings. *Plaintiff's Brief,* ECF No. 24. The Commissioner takes the position that his decision should be affirmed in its entirety because the ALJ's decision correctly applied the governing legal standards, reflected consideration of the entire record, and was supported by sufficient explanation and substantial evidence. *Defendant's Brief Pursuant to Local Civil Rule 9.1,* ECF No. 27.

## IV. DISCUSSION

### A. RFC

Plaintiff argues that substantial evidence offers no support for the ALJ's RFC determination. *Plaintiff's Moving Brief*, ECF No. 24, pp. 27–40. This Court disagrees.

A claimant's RFC is the most that the claimant can do despite her limitations. 20 C.F.R. § 404.1545(a)(1). At the administrative hearing stage, an ALJ is charged with determining the claimant's RFC. 20 C.F.R. §§ 404.1527(e), 404.1546(c); *see also Chandler*, 667 F.3d at 361 ("The ALJ—not treating or examining physicians or State agency consultants—must make the ultimate disability and RFC determinations.") (citations omitted). When determining a claimant's RFC, an ALJ has a duty to consider all the evidence. *Plummer*, 186 F.3d at 429. However, the ALJ need include only "credibly established" limitations. *Rutherford*, 399 F.3d at 554; *see also Zirnsak v. Colvin*, 777 F.3d 607, 615 (3d Cir. 2014) (stating that the ALJ has discretion to exclude from the RFC "a limitation [that] is supported by medical evidence, but is opposed by other evidence in the record" but "[t]his discretion is not unfettered—the ALJ cannot reject

evidence of a limitation for an unsupported reason" and stating that "the ALJ also has the discretion to include a limitation that is not supported by any medical evidence if the ALJ finds the impairment otherwise credible").

Here, the ALJ determined that Plaintiff had the RFC to perform a limited range of sedentary work:

> After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) except the work may require frequent climbing of ramps and stairs; and occasional balancing, stooping, kneeling, crouching and crawling. However, the work may never demand climbing of ladders, ropes and scaffolds; nor exposure to unprotected heights, hazardous moving mechanical parts, or operation of a motor vehicle. The work may also require frequent bilateral handling and fingering.

R. 19. In making this determination, the ALJ detailed years of record evidence, including, *inter alia*, the progression of Plaintiff's cervical condition from as early as 2005, [3] noting a motor vehicle accident in 2005; complaints of neck pain and radiological evidence of disc herniation and annular tear, but examination findings of full strength and grossly normal sensory system; an initial surgery in 2006 (anterior cervical diskectomy, fixation, and fusion of C3-C4, C4-05, and C5-C6) with record from physical therapy one month after surgery showing above average improvement and records from four months after the initial surgery showing 90% improvement; records showing stabilized symptoms of the cervical spine after a little more than a year, Plaintiff 's report of numbness in her right hand; evidence of additional disc disease in a different area of the cervical spine, which resulted in a second surgery in January 2008, and an ability to walk three days after surgery; the ALJ's finding that Plaintiff's surgeries could reasonably be expected to produce limitations that were consistent with the range of sedentary

---

[3] The ALJ noted that these earlier records form part of a longitudinal basis for Plaintiff's alleged impairment and condition. R. 20.

work that he assessed in his RFC determination; subsequent medical records reflecting significant symptomatic improvement as a result of prescribed exercises and physical therapy, including rehabilitative records from Ivy Rehab; trigger point injection treatment records from Paul Ratzker, M.D., reflecting gradual improvement and alleviation in pain and function; Dr. Ratzker's finding in January 2009 that Plaintiff had good range of motion and 5/5 strength with no need for follow up; and finding that the medical evidence supported a finding of a severe physical impairment prior to the date last insured and the end of the prescribed period but finding that "the evidence of record is sparse in describing the degree of limitations the claimant had during the periods under review." R. 20−21. The ALJ also noted at step three that there was insufficient evidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness) accompanied by sensory or reflex loss and insufficient evidence of positive straight-leg raising to correspond with involvement of the lower back, spinal arachnoiditis, or lumbar spinal stenosis resulting in pseudoclaudication. R. 19. In the view of this Court, this record contains substantial evidence to support the ALJ's RFC determination. *See Zirnsak*, 777 F.3d at 615; *Rutherford*, 399 F.3d at 554; *Plummer*, 186 F.3d at 429.

Plaintiff challenges this determination on a number of bases. *Plaintiff's Moving Brief*, ECF No. 24, pp. 29−40. Plaintiff first contends that the ALJ erred in his consideration of an opinion from a treating physician at the Summit Springfield Family Practice dated April 3, 2014.[4] *Id*. at 29−30. This physician completed a two-page general medical report, consisting of fill-in-the blank and check-the-box information. R. 409−11. The physician first examined Plaintiff on January 23, 2012, saw Plaintiff for yearly physicals and "episodic visits"

_____

[4] Although the physician printed and signed his or her name, that name is illegible. R. 409−11.

11

approximately three times a year, and last examined Plaintiff on January 27 and April 1, 2014. R. 409. The physician opined that Plaintiff could lift and carry a maximum of ten pounds; was limited to standing and/or walking less than two hours per day; was limited to sitting less than six hours per day; and had no limitation in handling objects, hearing, speaking and traveling. R. 410. The physician checked the box reflecting that Plaintiff was limited in her ability to push and/or pull, including hand and foot controls, but did not specify the limitation. *Id*. In response to the question whether there were "any other conditions that limit this individual's ability to do work related activities[,]" the physician checked the box marked "Yes" and wrote "Pain." *Id*.

The ALJ specifically considered this treating physician's opinions but assigned them "little weight," reasoning as follows:

> As for the opinion evidence, on April 1, 2014, what appears to be a treating doctor from Summit Springfield Family Practice indicates an opinion on functionality on a general medical report (7F). It states, among other things, that the claimant cannot lift or carry more than ten pounds, and that she is limited to walking less than two hours per day, and sitting for less than six hours per day (7F/2). However, *this opinion seems to be based on a treatment period falling outside of the relevant adjudication period* (7F/1). Indeed, it seems *the treatment period began four years after the period in issue, and was rendered six years after the period in issue*. It is accorded little weight.

R. 21 (emphasis added). Plaintiff criticizes this evaluation, contending that "the decision is more than slightly off on its calculation of the dates involved" because the treatment began in January 2012, and therefore the treatment began a "little more than a year after December 31, 2010[,]" the end of the prescribed period for disabled widow's benefits. *Plaintiff's Moving Brief*, ECF No. 24, p. 30. Notwithstanding this calculation error, however, the ALJ still correctly noted that the opinion is based on a treatment period that falls outside the relevant adjudication period, R. 21, which Plaintiff concedes ended more than a year before that doctor's treatment began. *Plaintiff's Moving Brief*, ECF No. 24, p. 30. The ALJ therefore did not err in discounting this opinion

addressing treatment that began more than one year after the relevant period and which was issued more than three years after the relevant period. *See Maxwell v. Comm'r of Soc. Sec.*, No. CV 19-8687, 2020 WL 3097532, at *7 (D.N.J. June 11, 2020) (finding that a report "has little probative value, and therefore the ALJ did not err by refusing to address it" where it assessed the claimant's physical capabilities over four years after the date last insured); *Porter v. Comm'r of Soc. Sec.*, No. CV 18-03744, 2019 WL 2590994, at *4–5 (D.N.J. June 25, 2019) (finding that the ALJ did not err in assigning little weight to doctor's opinion where it was rendered more than a year after the claimant's date last insured and did not indicate that it relates back to the disability evaluation period and noting that "Plaintiff must establish disability as of her date last insured"); *cf. Moreau v. Comm'r of Soc. Sec.*, No. 2:18-CV-14213, 2019 WL 2612750, at *5 (D.N.J. June 25, 2019) ("Plaintiff's other medical issues, such as strokes and HIV, all occurred after the date last insured and therefore are not relevant here. . . . Additionally, after reviewing the record, the state agency physicians opined that there was insufficient evidence to establish Plaintiff's claim prior to the date last insured.").

Plaintiff next complains that remand is warranted because the ALJ failed to recite relevant clinical findings from "treatment notes from Dr. Lucy Thalody dated December 20, 2010[,]" January 14, 2011, and February, 2011, when crafting the RFC determination. *Plaintiff's Moving Brief*, ECF No. 24, pp. 30–31 (arguing that notes from December 20, 2010, "indicate that plaintiff had suffered low back pain beginning 'three year ago' which started gradually but was now 10/10 in intensity preventing her from staying too long at night or sleeping on the right side. She had a positive ANA test and right hip tenderness"; "By January 14, 2011 Dr. Thalody indicated that plaintiff suffered severe low back pain and by February, 2011 an MRI of the

lumbar spine indicated disc bulges at L3-L4 and L4-L5 with facet hypertrophy"). Plaintiff's argument is not well taken.

As a preliminary matter, no medical professional with the name "Dr. Lucy Thalody" appears in the record. To the extent that Plaintiff intended to refer to Maryann Curiba, M.D., who examined Plaintiff on the specified dates, R. 404–08, Plaintiff's argument is still unavailing. While the ALJ did not specifically refer to Dr. Curiba by name, he considered her treatment records, noting that the mere references to carpal tunnel syndrome, lumbago, and positive antinuclear antibodies ("ANA") were insufficient to establish that any of these impairments were severe. R. 18 (referring to, *inter alia*, Exhibit 6F, which contains Dr. Curiba's records, R. 404–08). Plaintiff refers to findings in Dr. Curiba's records of a positive ANA test and disc bulges,[5] but Plaintiff does not identify—nor can the Court locate—any specific functional limitations flowing from these conditions that the ALJ failed to include in the RFC. *Plaintiff's Moving Brief*, ECF No. 24, pp. 30–31; *see also* R. 404–08. Without more, these medical findings, therefore, do not establish any functional limitations. *Cf. Foley v. Comm'r of Soc. Sec.*, 349 F. App'x 805, 808 (3d Cir. 2009) ("A diagnosis alone, however, does not demonstrate disability.") (citing *Petition of Sullivan*, 904 F.2d 826, 845 (3d Cir. 1990)); *see also Phillips v. Barnhart*, 91 F. App'x 775, 780 (3d Cir. 2004) ("[The claimant's] argument incorrectly focuses on the diagnosis of an impairment rather than the functional limitations that result from that impairment. A diagnosis of impairment, by itself, does not establish entitlement to benefits under the Act"). Notably, as previously discussed, an ALJ need include only "credibly established" limitations, *i.e.*, limitations "that are medically supported and otherwise uncontroverted in the record."

---

[5] Dr. Curiba's notes also reflect improved symptoms. *See* R. 406 (noting on February 25, 2011, that Plaintiff's "[b]ack feels better"), 407 (noting on March 25, 2011, that Plaintiff was "feeling better").

*Rutherford*, 399 F.3d at 554; *see also Grella v. Colvin*, No. 3:12-CV-02115-GBC, 2014 WL 4437640, at *18 (M.D. Pa. Sept. 9, 2014) ("[T]he ALJ cannot accommodate limitations which do not exist, or which cannot be found in the medical record. No specific functional limitations were provided by any of Plaintiff's medical sources with respect to her carpal tunnel syndrome[.]") (internal citation and quotation marks omitted); *Paczkoski v. Colvin*, No. 3:13-CV-01775, 2014 WL 4384684, at *9 (M.D. Pa. Sept. 4, 2014) ("Dr. Singh did not opine that Paczkoski had any specific functional limitations or that he was disabled. . . . Thus, there was no opinion of functionality by Dr. Singh that the ALJ could weigh."). In short, Plaintiff has not shown that the ALJ erred in his consideration of Dr. Curiba's records or that any such error warrants remand. *See Shinseki v. Sanders*, 556 U.S. 396, 409–10 (2009) ("[T]he burden of showing that an error is harmful normally falls upon the party attacking the agency's determination. . . . [T]he party seeking reversal normally must explain why the erroneous ruling caused harm."); *Rutherford*, 399 F.3d at 553 (finding that "a remand is not required here because it would not affect the outcome of the case").

Plaintiff also contends that the ALJ erred in evaluating her subjective complaints. *Plaintiff's Moving Brief*, ECF No. 24, pp. 31–40. "Subjective allegations of pain or other symptoms cannot alone establish a disability." *Miller v. Comm'r of Soc. Sec.*, 719 F. App'x 130, 134 (3d Cir. 2017) (citing 20 C.F.R. § 416.929(a)). Instead, objective medical evidence must corroborate a claimant's subjective complaints. *Prokopick v. Comm'r of Soc. Sec.*, 272 F. App'x 196, 199 (3d Cir. 2008) (citing 20 C.F.R. § 404.1529(a)). Specifically, an ALJ must follow a two-step process in evaluating a claimant's subjective complaints. SSR 16-3p, 2016 WL 1119029 (March 16, 2016). First, the ALJ "must consider whether there is an underlying medically determinable physical or mental impairment(s) that could reasonably be expected to

produce an individual's symptoms, such as pain." *Id.* "Second, once an underlying physical or mental impairment(s) that could reasonably be expected to produce an individual's symptoms is established, [the ALJ] evaluate[s] the intensity and persistence of those symptoms to determine the extent to which the symptoms limit an individual's ability to perform work-related activities[.]" *Id.*; *see also Hartranft v. Apfel*, 181 F.3d 358, 362 (3d Cir. 1999) ("[Evaluation of the intensity and persistence of the pain or symptom and the extent to which it affects the ability to work] obviously requires the ALJ to determine the extent to which a claimant is accurately stating the degree of pain or the extent to which he or she is disabled by it.") (citing 20 C.F.R. § 404.1529(c)). In this evaluation, an ALJ considers objective medical evidence as well as other evidence relevant to a claimant's symptoms. 20 C.F.R. § 404.1529(c)(3) (listing the following factors to consider: daily activities; the location, duration, frequency, and intensity of pain or other symptoms; precipitating and aggravating factors; the type, dosage, effectiveness, and side effects of any medication you take or have taken to alleviate pain or other symptoms; treatment, other than medication, currently received or have received for relief of pain or other symptoms; any measures currently used or have used to relieve pain or other symptoms; and other factors concerning your functional limitations and restrictions due to pain or other symptoms).

Finally, "[t]he ALJ has wide discretion to weigh the claimant's subjective complaints, *Van Horn v. Schweiker*, 717 F.2d 871, 873 (3d Cir. 1983), and may discount them where they are unsupported by other relevant objective evidence." *Miller*, 719 F. App'x at 134 (citing 20 C.F.R. § 416.929(c)); *see also Izzo v. Comm'r of Soc. Sec.,* 186 F. App'x 280, 286 (3d Cir. 2006) ("[A]

reviewing court typically defers to an ALJ's credibility determination so long as there is a sufficient basis for the ALJ's decision to discredit a witness.").[6]

Here, the ALJ followed this two-step evaluation process. The ALJ concluded that Plaintiff's medically determinable impairments could reasonably be expected to cause symptoms, but that Plaintiff's statements "concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision." R. 20; *see also* R. 21 ("These records indicate a limit to the extent of limitations, and while I have afforded the claimant the benefit of the record in finding the above capacity, there is no more evident dysfunction of record."). As previously discussed, the ALJ detailed years of medical evidence and record testimony to support his finding. R. 19–22. This record provides substantial support for the ALJ's decision to discount Plaintiff's subjective statements as inconsistent with the medical evidence. *Van Horn*, 717 F.2d at 873; *Miller*, 719 F. App'x at 134; *Izzo*, 186 F. App'x at 286. Accordingly, to the extent that Plaintiff relies on her own subjective statements to undermine the ALJ's RFC determination, that argument is unavailing. *Id*.

Turning back to Plaintiff's challenges to the RFC determination, Plaintiff also contends that the ALJ erred in considering evidence from physical therapists. *Plaintiff's Moving Brief*, ECF No. 24, pp. 34–36. Plaintiff specifically complains that the ALJ "relegates all evidence from license[d] physical therapist[s] as 'not acceptable medical sources'" and that the ALJ's

---

[6]SSR 16-3p superseded SSR 96-7p on March 26, 2016, and eliminated the use of the term "credibility." SSR 16-3p. However, "while SSR 16-3P clarifies that adjudicators should not make statements about an individual's truthfulness, the overarching task of assessing whether an individual's statements are consistent with other record evidence remains the same." *Levyash v. Colvin*, No. CV 16-2189, 2018 WL 1559769, at *8 (D.N.J. Mar. 30, 2018).

treatment of this evidence makes it "difficult for the Court to apply its judicial review." *Id.*
Plaintiff's arguments are not well taken.

At the time of the ALJ's decision, physical therapists were not "acceptable medical
sources" but instead were characterized as "other sources." 20 C.F.R. § 404.1513(a), (d) (eff.
Sept. 3, 2013 to Mar. 26, 2017). "Consequently, the rules for evaluating acceptable medical
source statements do not apply to the physical therapist's notes." *Hatton v. Comm'r of Soc. Sec.
Admin.*, 131 F. App'x 877, 878–79 (3d Cir. 2005) (citing 20 C.F.R. § 404.1527(a)(2)).
"Statements from a physical therapist are entitled to consideration as additional evidence, but are
not entitled to controlling weight." *Id.* (citing 20 C.F.R. § 404.1513(d)); *see also Scott v.
Comm'r, Soc. Sec. Admin.*, No. CV 18-11264, 2019 WL 2574974, at *4 (D.N.J. June 24, 2019)
("[T]he Third Circuit has found 'statements from a physical therapist are entitled to
consideration as additional evidence" although they may not be entitled to controlling weight.")
(quoting *Hatton*, 131 Fed. App'x at 878); *Basnett v. Comm'r of Soc. Sec.*, No. CV 18-4567, 2019
WL 1375779, at *10 n.5 (D.N.J. Mar. 26, 2019) ("[T]he ALJ did not err in considering the
physical therapists' treatment notes and not affording them controlling weight").

Here, the ALJ considered the statements from physical therapists but assigned them
"little weight" as follows:

> There are some aspects of the medical record that could be misconstrued as
> opinions on functionality, in that they describe degrees of limitation in a generalized
> manner (e.g. 5F/20, 53, 66 [R. 329, 362, 375, respectively]). They are in physical
> therapy notes, and describe limitations ranging from mild to severe, and reflect
> different periods of the claimant's recovery from surgery. However, such
> statements are more akin to observations by therapists, and in turn, are also not
> from acceptable medical sources. Still, they seem to reasonably reflect the stages
> of the claimant's conditions. In this respect, they are given little weight to the extent
> they describe the function at particular times of the claimant's recovery.

R. 21. The Court finds no error with the ALJ's evaluation in this regard. *See Hatton*, 131 Fed.

App'x at 878; *Scott*, 2019 WL 2574974, at *4; *Basnett*, 2019 WL 1375779, at *10 n.5.

Finally, Plaintiff contends that the ALJ's final paragraph in his RFC analysis is difficult

to follow and improperly rejects evidence that actually supports her subjective complaints.

*Plaintiff's Moving Brief*, ECF No. 24, pp. 36−37 (citing R. 21−22). This Court disagrees. The

final paragraph to which Plaintiff refers states as follows:

> In sum, the above residual functional capacity assessment is supported by the record
> as a whole, including the aspects of the claimant's testimony that are consistent
> with the medical record. I note that the latter portion of the record does identify
> some impairments that can be reasonably related to the cervical conditions (see e.g.
> 9F/20). However, these impairments were not relevant during the adjudicative
> period, and thus could not be considered in determining the applicable residual
> functional capacity. Thus, they are not assessed and considered at length.

R. 21−22. The cited portion of the record are notes from an office visit with Rami W. Bader,

M.D., dated April 24, 2014. R. 432 (Exhibit 9F/20, reflecting Dr. Bader's impressions as

follows: (1) mild left sensory median nerve neuropathy at the wrist, which was consistent with

the clinical diagnosis of carpal tunnel syndrome, and (2) bilateral C3, C4, CS, C6, C7 and CS

radiculopathy). These notes therefore reflect Plaintiff's condition more than three years after the

end of the prescribed period. For the reasons previously discussed, the ALJ did not err in finding

them to be of little probative value. *See Maxwell*, 2020 WL 3097532, at *7; *Porter*, 2019 WL

2590994, at *4−5; *Moreau*, 2019 WL 2612750, at *5.

For all these reasons, the Court concludes that the ALJ's RFC determination is consistent

with the evidence and enjoys substantial support in the record.

## B.    Step Five

At step five of the sequential evaluation, the ALJ found that Plaintiff's semi-skilled job as

a sales floor member at Macy's had conferred skills that were transferable to other occupations

existing in significant numbers in the national economy, including the representative job of telephone sales representative; therefore, the ALJ found, Plaintiff was not disabled within the meaning of the Social Security Act. R. 22–23. Plaintiff challenges this determination in a few different ways. *Plaintiff's Moving Brief*, ECF No. 24, pp. 15–27. The Court addresses these challenges in turn.

### 1.    Age category

Plaintiff argues that her age (54 years, 5 months) at the end of the prescribed period for widow's benefits (December 31, 2010)[7] "st[r]addles" the age categories under the applicable regulations, but "leans toward" the older age category, which would direct a finding of disabled under the grids.[8] *Plaintiff's Moving Brief*, ECF No. 24, pp. 15–18, 23–26. Plaintiff's argument is not well taken.

When deciding whether a claimant is disabled, a court will consider the claimant's chronological age in combination with his or her RFC, education, and work experience. 20 C.F.R. § 404.1563(a). In determining the extent to which age affects a person's ability to adjust to other work, the court considers advancing age to be an increasingly limiting factor in the person's ability to make such an adjustment. *Id.* When making a finding about ability to do other work, the court uses age categories that apply to the claimant during the period for which it must determine if the claimant is disabled. *Id.* at § 404.1563(b). If a claimant is "closely approaching

---

[7] Plaintiff was born on July 9, 1956. R. 22. Plaintiff was 52 years, 5 months of age on the date on which she was last insured for purposes of her own work history and disability insurance benefits, *i.e.*, December 31, 2008.

[8] The Medical Vocational Guidelines, 20 C.F.R. Part 404, Subpart P, Table 1, Appendix 2, also known as the "grids," "are 'rules' which are used to direct conclusions of 'disabled' or 'not disabled' based on a claimant's vocational factors (age, education, and work experience) and exertional RFC (sedentary, light, medium, heavy or very heavy)." *Martin v. Barnhart*, 240 F. App'x 941, 944 (3d Cir. 2007) (citations omitted).

advanced age" (age 50–54), the Court will consider that the claimant's age along with a severe impairment(s) and limited work experience may seriously affect the claimant's ability to adjust to other work. *Id*. at § 404.1563(d). A court considers that at "advanced age" (age 55 or older), "age significantly affects a person's ability to adjust to other work." *Id*. at § 404.1563(e).

Here, the ALJ determined that Plaintiff was in the age category of "closely approaching advanced age" "at all relevant times of adjudication." R. 19. Plaintiff disagrees, insisting that she "leans to" to the older age category, "advanced age," because she was 54 years, 5 months, at the end of the prescribed period for widow's benefits, *i.e.*, a category that would direct a finding of disabled. *Plaintiff's Moving Brief*, ECF No. 24, pp. 15–18, 23–26. It is true that the Court "will not apply the age categories mechanically in a borderline situation;" if a claimant is "<u>within a few days to a few months</u> of reaching an older age category, and using the older age category would result in a determination or decision that you are disabled," the court will consider whether to use the older age category after evaluating the overall impact of all the factors of the claimant's case. 20 C.F.R. § 404.1563(b) (emphasis added). Plaintiff, however, was not "within a few days to a few months" of reaching the "advanced age" category. She concedes that she was 7 months away from that category. A "borderline" age situation does not extend to someone like Plaintiff. *See Roberts v. Barnhart*, 139 F. App'x 418, 420 (3d Cir. 2005) ("Nor is there any authority extending the benefits of a 'borderline' age determination to persons like Roberts who are within five (5) to six (6) months of their fiftieth birthday."); *Rosemary P. v. Comm'r of Soc. Sec.*, No. 2:18-CV-33, 2018 WL 3574921, at *7 (W.D. Pa. July 25, 2018) ("Although the regulations do provide some flexibility in determining which grid to apply, it is also true that the plaintiff was seven months away from the advanced age category and for this reason not entitled to the waiver.") (citing *Roberts*, 139 F. App'x at 420); *Vargas v. Colvin*, No. CV 15-2502, 2017 WL

123436, at *13–14 (D.N.J. Jan. 11, 2017) ("I am not persuaded that seven months prior to a transition-in-age category is a borderline situation. Non-precedential as the *Roberts* holding may be, the text of the regulation [20 C.F.R. § 404.1563(b)] supports it. Although the term "a few months" may be intentionally vague, a "few" does not usually mean as many as seven, and the preceding alternative phrase "a few days" suggests that the court should round downward, not upward."). Accordingly, Plaintiff's argument that she falls into the "advanced age" category and is therefore disabled under the grids is not well taken.

## 2.     Categorization of Plaintiff's past relevant work

Plaintiff also argues that the ALJ erred in categorizing her past relevant work as a semi-skilled "sales floor member" at Macy's, characterizing that work instead as an unskilled "floor girl" or "sales attendant" under the Dictionary of Occupational Titles ("DOT"), thus qualifying her as disabled under grid rule 201.12.[9] *Plaintiff's Moving Brief*, ECF No. 24, pp. 14, 18–20. This Court disagrees.

"[A] vocational expert or specialist may offer expert opinion testimony in response to a hypothetical question about whether a person with the physical and mental limitations imposed by the claimant's medical impairment(s) can meet the demands of the claimant's previous work[.]" 20 C.F.R. § 404.1560(b)(2). "As a general rule, occupational evidence provided by a [vocational expert] should be consistent with the occupational evidence presented in the DOT." *Zirnsak*, 777 F.3d at 617 (citing SSR 00-4p, 2000 WL 1898704, at *2 (Dec. 4, 2000)). "To ensure consistency, courts have imposed an obligation on ALJs to '[i]dentify and obtain a

[9] The DOT is a "publication of the United States Department of Labor that contains descriptions of the requirements for thousands of jobs that exist in the national economy," with which ALJs generally consult to determine whether any jobs exist that a claimant can perform. *Burns v. Barnhart*, 312 F.3d 113, 119 (3d Cir. 2002).

reasonable explanation for any conflicts between occupational evidence provided by [vocational experts] . . . and information in the [DOT].'" *Id.* (quoting SSR 00-4p at *1). "Specifically, an ALJ is required to (1) ask, on the record, whether the [vocational expert's] testimony is consistent with the DOT, (2) 'elicit a reasonable explanation' where an inconsistency does appear, and (3) explain in its decision 'how the conflict was resolved.'" *Id.* (quoting *Burns*, 312 F.3d at 127). "An ALJ's failure to comply with these requirements may warrant remand in a particular case[,]" but "the presence of inconsistencies does not mandate remand, so long as "'substantial evidence exists in other portions of the record that can form an appropriate basis to support the result.'" *Id.* (quoting *Rutherford*, 399 F.3d at 557).

Finally, a vocational expert may rely on his or her own experience in addition to the DOT when determining whether an individual is capable of performing any work. *Horodenski v. Comm'r of Soc. Sec.*, 215 F. App'x 183, 189–90 (3d Cir. 2007) (finding the ALJ did not err in relying on a vocational expert who based his opinion on thirty years of his experience); *Butler v. Colvin*, No. CIV. 13-7488, 2015 WL 570167, at *9 (D.N.J. Feb. 11, 2015) (noting that Judges in the Third Circuit "have encouraged" vocational experts "to rely on their experiences rather than solely on the DOT").

Here, Plaintiff testified at the administrative hearing that, while working the on sales floor at Macy's, "I hung up clothes, I filled up the racks, I picked up clothes in the fitting room. I rung the register. Basically ran the whole floor." R. 39. Based on Plaintiff's testimony, the vocational expert classified Plaintiff's job as "sales floor member," DOT No. 279.357-054,[10] a

---

[10] The DOT describes this job as follows: "Sells variety of commodities in sales establishment, performing duties as described under SALESPERSON (retail trade; wholesale tr.) Master Title. [M]ay demonstrate use of merchandise. May examine defective article returned by customer to determine if refund or replacement should be made. May estimate quantity of merchandise required to fill customer's need."

semi-skilled job. R. 55. The vocational expert specifically testified that her testimony was consistent with the DOT and, to the extent that it may not have been, she was relying on her own experience. R. 61; *see also* R. 55.

In his decision at step five, the ALJ considered the grids as a frame for decision-making, and relied on the vocational expert's testimony to find that Plaintiff's past work as a sales floor member was semi-skilled. R. 22 (stating that the job was classified as light exertional, but performed at medium level and SVP-3). Although the ALJ found that Plaintiff was unable to perform her past work as a sales floor member, the ALJ relied on vocational expert testimony, that there were a significant number of other jobs, in the national economy (*i.e.*, 200,000 jobs in the national economy as a telephone sales representative) that Plaintiff could perform to conclude that Plaintiff was not disabled. R. 22–23. The ALJ therefore found that the vocational expert testimony and grid rule 201.15[11] directed a finding of "not disabled." R. 23.

Plaintiff, however, insists that her past work at Macy's was not as a semi-skilled "sales floor member," but was an unskilled job, specifically, a "sales attendant," DOT No. 299.677-010.[12] She argues that a finding of disabled under grid rule 201.12 was therefore required. *Plaintiff's Moving Brief*, ECF No. 24, pp. 14, 18–20. Plaintiff's argument is not well taken. Here, the ALJ relied on vocational expert testimony in finding that Plaintiff's past work at

---

[11] This rule directs a finding of not disabled where a person is "closely approaching advanced age" who is a high school graduate whose previous work experience was semi-skilled with transferable skills.

[12] The DOT identifies this job as unskilled (SVP: 2) and describes this job as follows: "Performs any combination of following duties to provide customer service in self-service store: Aids customers in locating merchandise. Answers questions from and provides information to customer about merchandise for sale. Obtains merchandise from stockroom when merchandise is not on floor. Arranges stock on shelves or racks in sales area. Directs or escorts customer to fitting or dressing rooms or to cashier. Keeps merchandise in order. Marks or tickets merchandise. Inventories stock."

Macy's was a semi-skilled "sales floor member." R. 22–23. To the extent that any of the vocational expert's testimony might be characterized as inconsistent with the DOT, the vocational expert sufficiently resolved any such conflict by relying on her own experience. R. 61; *see also* R. 55. A vocational expert may rely on his or her own experience and an ALJ does not err when relying on a vocational expert who bases his or her opinion on that experience. *Horodenski*, 215 F. App'x at 189–90; *Butler*, 2015 WL 570167, at *9; *Knight v. Colvin*, No. CV 16-1816, 2018 WL 1400077, at *1 n.1 (W.D. Pa. Mar. 20, 2018) ("The ALJ's reliance on this [vocational expert testimonial] evidence was reasonable, especially in light of the fact that the DOT provides the maximum requirements for occupations as generally performed, not the requirements for a specific job in a specific setting. A VE can provide more specific information about a specific job, which is precisely what happened here."). Notably, Plaintiff's counsel did not object at the hearing to either the vocational expert's qualifications or to her testimony regarding the identification of Plaintiff's past work at Macy's as a "sales floor member." *See generally* R. 54–61; *cf. Brown v. Comm'r of Soc. Sec.*, No. CV 19-2110, 2020 WL 1244186, at *5 (E.D. Pa. Mar. 16, 2020) ("Brown's counsel did not object to either the VE's qualifications or to her testimony in this respect. . . . Therefore, the ALJ did not err in relying on the VE's testimony.") (citations omitted). In short, the ALJ reasonably relied on the vocational expert's testimony when finding that Plaintiff's past work at Macy's was as a semi-skilled "sales floor member" and, therefore, grid rule 201.12, which relates to unskilled work experience, is inapplicable in this case.

### 3.    Transferable skills

Plaintiff next argues that, even if her previous work experience at Macy's was semi-skilled, the ALJ erred in finding that the transferable skills from that work were "sales" skills.

*Plaintiff's Moving Brief*, ECF No. 24, pp. 14, 18–26. Plaintiff specifically contends that the skills acquired in that past work were limited to opening new accounts instead of "dealing with people" or "sales." *Id*. Plaintiff's argument is not well taken.

As a preliminary matter, the Court agrees with the Commissioner that Plaintiff bases this argument on an incomplete statement of the vocational expert's testimony regarding the skills that transferred from her job as a sales floor member to the job of telephone sales representative. *Defendant's Brief Pursuant to Local Civil Rule 9.1*, ECF No. 27, pp. 16–17. Plaintiff argues that the vocational expert testified that Plaintiff's transferable skills consisted only of "dealing with people[,]" which Plaintiff argues is not a transferable skill but a worker "trait," thus placing her within grid rule 201.14.[13] *Plaintiff's Moving Brief*, ECF No. 24, pp. 14–15, 18–26. However, the vocational expert testified that the skills transferable from Plaintiff's semi-skilled job as a Macy's sales floor member to telephone sales representative were "sales." R. 57, 59–60. While Plaintiff's counsel challenged the vocational expert in this regard, ("[S]ales is a word, that's not a skill[,]" R. 60), the vocational expert consistently explained that "sales" was indeed a set of transferable skills. R. 57–60. The vocational further explained that "sales" includes such skills as "processing the orders on the cash registers and also opening new accounts on the computer[,]" R. 58; *see also* R. 61, and being "able to deal with people, public[.]" R. 60. The Court finds that the ALJ reasonably relied on the vocational expert's testimony, which provided substantial support for the ALJ's step five determination that Plaintiff's past work experience as a sales floor member had transferable "sales" skills that enabled her to perform the job of

---

[13] This rule directs a finding of disabled for an individual who is closely approaching advanced age, with a high school education and skilled or semi-skilled work experience, but whose skills are not transferable.

telephone sales representative. R. 22–23. Accordingly, the Court rejects as inapplicable Plaintiff's arguments that grid rule 201.14 directed a finding of disabled.

## V.     CONCLUSION

For these reasons, the Court **AFFIRMS** the Commissioner's decision.

The Court will issue a separate Order issuing final judgment pursuant to Sentence 4 of 42 U.S.C. § 405(g).

**IT IS SO ORDERED.**


Date:  May 3, 2021                                     _____*s/Norah McCann King*_____
                                                                    NORAH McCANN KING
                                                                    UNITED STATES MAGISTRATE JUDGE